**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BYAER JOHNSON, | : |
| Plaintiff, | : Civ. No. 17-1567 (PGS)(JBD) |
| v. | : |
| NEW JERSEY STATE PRISON, et al., | : **OPINION** |
| Defendants. | : |

**PETER G. SHERIDAN, U.S.D.J.**

### I. INTRODUCTION

Plaintiff, Byaer Johnson ("Plaintiff"), is a state prisoner currently incarcerated at New Jersey State Prison ("NJSP") in Trenton, New Jersey. He is proceeding with a civil rights complaint ("Complaint") against Defendants Officer D. Miles ("Miles") and Officer D. Priebs ("Priebs") (hereinafter "Defendants"). (ECF No. 1.) Presently pending before this Court is Defendants' motion for summary judgment (ECF No. 45), Plaintiff's response (ECF No. 58), and Defendants' reply (ECF No. 68). For the following reasons, the motion for summary judgment is granted in part and denied in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 2017, Plaintiff filed his Complaint asserting an Eighth Amendment excessive force claim and a conspiracy claim. (ECF No. 1.) On February 5, 2019, the Court screened Plaintiff's Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). (ECF No. 5.) Upon screening, the Court proceeded Plaintiff's Eighth Amendment excessive force and conspiracy claims against Defendants. (*See id.*)

Plaintiff's claims arise out of an incident that occurred on December 11, 2016, in Plaintiff's housing unit. (ECF No. 58-2, Pl. State. Of Mat. Facts ("PSOMF") ¶ 2.) According to Defendants, Defendant Priebs was conducting a search of Plaintiff's cell, which was located on the third-tier. (ECF No. 45-5, Def. State. Of. Mat. Facts. ("DSOMF") ¶ 5.) Around the same, time Plaintiff was returning to his housing unit after work. (*Id.*) Defendant Miles ordered Plaintiff to "lock in" to an empty cell located on the first-tier. (*Id.*) Plaintiff submits that he was neither aware-of nor given a reason for being ordered into the empty cell. (*Id.*)

Defendants submit Plaintiff provided several contradictory versions of his initial interactions with Defendants. First, in response to the subsequent disciplinary charge issued to him, Plaintiff stated that "he was not on [the] unit during [the] cell search." (*Id.* ¶ 5(a), citing Ex. F at 2.) Second, Plaintiff's Complaint alleges that "upon returning to [his] housing unit, . . . defendant [J.] Miles ordered [him] to lock

2

in an empty cell." (*Id.*, citing Ex. A at ¶ 2.) Third, Plaintiff claimed that his cell had already been searched by the time he returned from work, and that Defendant Miles ordered him into an empty cell upon returning from the shower. (*Id.*, citing Ex. H at 11; Ex. I at 9:16 – 10:12, 10:24 –11:3, 14:5-7). Plaintiff stated he "noticed everything [thrown] around" when he returned to his cell after work, but nevertheless proceeded to grab his "laundry bag that contained [his shower supplies] . . . [and] headed down the stairs to the shower" at which point he was stopped by Defendant Miles and ordered to lock into an empty cell. (*Id.*, citing Ex. H at 11; Ex. I at 12:5, 14-16). At the same time, Plaintiff also testified that he "went downstairs to go to the shower," and "was asked after coming back from the shower to lock into [the empty cell]." (*Id.*, citing Ex. I at 10:24–11:3).

Approximately 30 minutes later, Defendants returned and opened the cell Plaintiff was in. (*Id.* ¶ 6.) The Defendants' and Plaintiff's version of events differ as to what took place next. Plaintiff submits that as "[s]oon as [he] tried to find out what in the world was going on, Defendant Miles and Priebs began to savagely beat me with closed fist in the head, face, and body, in an unprovoked attack." (PSOMF ¶ 3.) Plaintiff claims that while he was being beat, he fell to the floor and Defendants handcuffed him behind the back. (*Id.* ¶ 4.) While handcuffed, Defendants kicked and punched him in the face, head, and body until other officers responded. (*Id.*)

3

Defendants submit that Plaintiff exited the cell with his hands concealed in his pockets and exclaimed "I'm tired of ya'll searching my s\*\*t." (DSOMF ¶ 6, citing Ex. F at 6, 8; Ex. D at 1; Ex. E at 1). Defendant Priebs then twice ordered Plaintiff to remove his hands from his pockets and, when Plaintiff finally complied, Defendants observed Plaintiff step towards Defendant Priebs in an aggressive manner with clenched fists. (*Id.*, citing Ex. F at 6, 8; Ex. D at 1; Ex. E at 1). Defendants claim that Defendant Priebs then struck Plaintiff twice about the "head/upper body area" while Defendant Miles called an emergency "code 33" over the radio before assisting Defendant Priebs "take [Plaintiff] to the ground" and attempt to place him in handcuffs. (*Id.*, citing Ex. D at 1; Ex. E at 1; Ex. F at 6, 8, 10, 12). Defendants claim a suited team of other officers quickly arrived in response to the "code 33," at which point Defendant Miles successfully handcuffed Plaintiff and the "code 33" was cleared at approximately 6:43 PM. (*Id.*, citing Ex. D at 1; Ex. E at 1; Ex. F at 8, 10, 12).

Defendants also submit that Plaintiff's inconsistent statements in discovery regarding his version of events. Defendants offer Plaintiff's deposition testimony and interrogatories explaining that Plaintiff claimed Defendants "told him to step out of the cell" and, after he complied, Defendant Priebs "handed [him] a piece of paper" and asked what it was. (*Id.*, citing Ex. H at 10; Ex. I at 11:8-17). Plaintiff stated that, as he "looked down to see what [Defendant Priebs] was talking about," he was

4

"punched in the eye." (*Id.*, citing Ex. H at 10; Ex. I at 11:8-17). Plaintiff states that he then "fell to the ground trying to protect [himself]" and, "[a]fter some time," began hearing "other officers . . . shouting give me your hands." (*Id.*, citing Ex. H at 10).

Plaintiff was taken to the medical unit for the "black eye, contusions, and the unpleasant sensations to head, face, and body [Plaintiff sustained]." (PSOMF ¶ 4.) Defendants submit that medical staff "observed a superficial injury to his left third finger, a superficial scar under his left eye, a bruise behind his left ear, and mild swelling on the left side of his lower lip." (DSOMF ¶11, citing Ex. A at 3, ¶ 6; Ex. D at 1; Ex. E at 1; Ex. F at 21; Ex. J at 29). Plaintiff's injuries were cleaned with saline and a topical antibiotic ointment and he as provide with Tylenol. (*Id.*)

Plaintiff alleges that Defendants then "concocted the story that they observed [Plaintiff] step towards Priebs in a hostile manner and they applied the appropriate amount of force to eliminate the threat that [Defendants] perceived." (PSOMF ¶ 5.) Defendant submits that Defendant Priebs charged Plaintiff with attempted assault, and he was subsequently found guilty by a hearing officer. (DSOMF ¶¶ 17-19.)

On August 13, 2021, Defendants filed a motion for summary judgment. (ECF No. 45.) Plaintiff filed a reply (ECF No. 58) and Defendants filed a reply (ECF No. 68). The Court held oral argument on June 15, 2023. (ECF No. 79.)

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . ., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at

6

324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Defendants argue Plaintiff's excessive force and conspiracy claims should be dismissed.

7

*1. Excessive Force*

Defendants argue that because the disciplinary hearing officer found Plaintiff guilty of attempting to assault Defendant Priebs, the Court may not consider any facts in support of Plaintiff's claim that the force used against him was unprovoked because it would "contradict the disciplinary proceedings arising from the same incident" or imply "that the disciplinary punishments imposed . . . were invalid." (ECF No. 68 at 5, citing *Concepcion v. Morton*, 125 F.Supp.2d 111, 123 (D.N.J. 2000), rev'd on other ground, 306 F.3d 1347 (3d Cir. 2002)). Defendants also argue that if *Concepcion* does not bar the Court from considering Plaintiff's facts in support of his claims, Plaintiff's excessive force claim should be dismissed because the amount of force used was a good faith effort to maintain discipline and Plaintiff suffered only de minimis injuries. (ECF No. 45-2 at 19-23.)

*a. Concepcion*

The Court finds Defendants' argument that Plaintiff's evidence would invalidate the disciplinary proceedings findings unconvincing. "[T]he mere fact of a conviction for assault or similar conduct does not automatically preclude recovery on an excessive force claim brought under § 1983, arising out of the same incident." *Ramos-Ramirez v. Berwick Borough*, 819 F. App'x. 103, 106 (3d Cir. 2020). In *Lora-Pena v. F.B.I.*, 529 F.3d 503 (3d Cir. 2008) (per curiam), for example, the plaintiff, a federal prisoner, filed a § 1983 and *Bivens* action against law enforcement

8

officers alleging they used excessive force in the course of his arrest. A federal officer admitted striking the plaintiff but only to the extent necessary to protect his firearm and subdue him. As a result of the circumstances of the arrest, the plaintiff was found guilty by a jury of three counts of assaulting a federal officer and resisting arrest. But the Third Circuit held that the *Heck*[1] doctrine did not bar the plaintiff's action. The court explained that "the question of whether the officers used excessive force was not put before the jury." *Lora-Pena*, 529 F.3d at 506. The plaintiff's convictions for resisting arrest and assaulting officers, the court added, "would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to [the plaintiff's] own unlawful actions." 529 F.3d at 506.

There is no evidence before the Court that the Hearing Officer made any factual findings regarding whether Defendants' use of force was justified or that it was not excessive. Thus, Plaintiff is free to claim that Defendants' use of force was excessive under the circumstances.

   b. *Good Faith and De Minimis Injuries*

When an inmate alleges that a prison official used excessive and unjustified force, the Eighth Amendment controls. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The subjective inquiry is

---

[1] *Heck v. Humphry*, 512 U.S. 477 (1994).

"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992); *see also Giles v. Kearney*, 571 F.3d 318, 328 (3d Cir. 2009). The objective inquiry is whether the inmate's injury was more than *de minimis*. *Id.* at 9–10.

The relevant factors the court must consider are:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Giles v. Kearney*, 571 F.3d at 328.

Defendants argue they lacked a sufficiently culpable state of mind and the force used against Plaintiff was intended only as a means to maintain discipline in the facility. Defendants argue first, Plaintiff's admitted refusal to obey Defendants' verbal commands on December 11, 2016, along with the aggressive posture he took towards Defendant Priebs, gave rise to the need for Defendants' application of force. (ECF No. 45-2 at 22.) However, a review of the December 11, 2016 transcript from the medical unit after the altercation at issue here does not show that Plaintiff admitted to "refusing to obey verbal commands." (*See* ECF No. 45-20 at 6:17-23.) Plaintiff stated only the following:

> I was assaulted by your officer. When you asked him what happened, he said that I had my hands in my pants in my

10

> pockets. I ain't do anything. He hit me. I ain't do nothing at all. When you asked him what happened, what happened, yo, what did he do and he told you, "He had his hands in his pants." That's it. I ain't do nothing.

(*Id.*) The evidence does not support Defendants' assertion that Plaintiff admitted to refusing to obey verbal commands. Plaintiff testified that Defendant Priebs handed him a piece of paper and when Plaintiff asked what it was Defendant Priebs punched him in the eye. (ECF No. 45-14 at 11:8-17.) Plaintiff's deposition testimony creates a genuine issue of material fact regarding the need for the application of force.

Second, Defendants argues that the amount of force employed – namely, two strikes about the "head/upper body area" followed by a brief struggle on the ground – was proportional to the need which existed at that time, and no more. However, Plaintiff's deposition testimony disputes this argument. Plaintiff testified that he was hit in the eye by Defendant Priebs and as he grabbed his eye, he fell to the ground, where he was kicked and punched. (ECF No. 45-14 at 16:11-22.) Plaintiff then testified that after officers responded he was handcuffed on the ground and "as they handcuffed [him], [he] was punched and kicked some more times." (*Id.* at 17:20-25.) Plaintiff's sworn deposition testimony, which included an account of more force used than "two strikes about the head/upper body area," is sufficient, on its own, to establish a genuine issue of material fact. *Aruanno v. Maurice*, 790 F. App'x. 431, 434 (3d Cir. 2019) ("[A]t the summary judgment stage, [Plaintiff]'s sworn

11

testimony, standing alone, was sufficient to establish a genuine issue of material fact.")

Finally, Defendants argue that the record demonstrates unequivocally that Plaintiff sustained only de minimis injuries as a result of the force employed by Defendants – specifically, a superficial injury to his left third finger, a superficial scar under his left eye, a bruise behind his left ear, and mild swelling on the left side of his lower lip. (ECF No. 45-2 at 22.) Although a lack of significant injury could weigh against Plaintiff's claim, it is not dispositive to the analysis. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (explaining that an "inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim[,]" but an "inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury" (internal marks and citation omitted)). *See also Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (explaining, in the Eighth Amendment context, that when there have been de minimis injuries, "[a] properly instructed fact finder could . . . [conclude] the force used was not of constitutional dimension," but that it "is an issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide").

Plaintiff was taken to the medical unit for the "black eye, contusions, and unpleasant sensations to head, face, and body [Plaintiff sustained]." (PSOMF ¶ 4.) In *Brooks v. Kyler*, the Third Circuit reversed the grant of summary judgment where there was only evidence of a few scratches to plaintiff's neck and wrists, but the plaintiff alleged that he was complying with the guards' orders and handcuffed when he was repeatedly punched in the head, stomped in the back and neck, slammed into a cell wall, choked, threatened, and nearly rendered unconscious. 204 F.3d 102, 104 (3d Cir. 2000) Similarly here, Plaintiff alleges that he was not disobeying Defendants' orders and he was kicked and punched while on the ground. Because Plaintiff need not suffer serious injury, let alone permanent injury, to proceed on his excessive force claims, Defendants are not entitled to summary judgment on the basis that Plaintiff did not suffer serious injuries.

*2. Conspiracy*

Defendants argue Plaintiff's conspiracy claims against them should be dismissed because the record is devoid of any evidence to support same. (ECF No. 45-2 at 28-29.)

In order to make out a claim of civil rights conspiracy, a Plaintiff must prove the elements of a conspiracy – a "meeting of the minds" shown through agreement and concerted action. *See Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008). The "bare allegation of an agreement is insufficient to sustain a conspiracy claim,"

13

*Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012), and a Plaintiff may not show a conspiracy by merely showing that two parties' actions had the same result or were the result of conscious parallelism without evidence supporting agreement and concerted action. *Desposito v. New Jersey*, No. 14-1641, 2015 WL 2131073, at *14 (D.N.J. May 5, 2015). Here, Plaintiff has presented no actual evidence of a conspiracy. Plaintiff makes a bare allegation that Defendants "wrote fraudulent disciplinary charges against [him] to conceal the assault." (ECF No. 1 ¶ 7.) In response to Defendants' motion for summary judgment, Plaintiff responded that Defendants "struck a deal and aided and abetted the arrangement to physical abuse Plaintiff and then falsely accuse him of being the aggressor, to cover up their outright evil and despicable and heinous deeds." (ECF No. 58-1 at 3.) Because Plaintiff has failed to produce any evidence of a meeting of the minds among Defendants, let alone a dispute of material fact, as to conspiracy, Defendants are entitled to summary judgment on Plaintiff's conspiracy claim.

*3. Official Capacity*

Defendants move for the dismissal of Plaintiff's claims against them in their official capacity for both monetary damages and injunctive relief. (ECF No. 45-2 at 14-17.) State employees in their official capacities are indeed immune from suit under § 1983 and the NJCRA as such a suit is merely a suit against their office and, in turn, employer, a prison and state department, neither of whom is a person subject

to suit and each of whom would in any event be entitled to Eleventh Amendment immunity in this Court. *See, e.g., Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health and Human Servs.*, 730 F.3d 291, (3d Cir. 2013); *Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013); *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013). Thus, while Plaintiff's excessive force claims against Defendants in their individual capacities shall proceed, all official capacity claims against them for monetary damages are dismissed.

Defendants argue that Plaintiff's official capacity claims for injunctive relief must be dismissed because there is no continuing violation of law.[2] The judicial doctrine of *Ex Parte Young* allows suits against states in federal court seeking prospective injunctive relief to proceed only against state officials acting in their official capacities. *See Ex Parte Young*, 209 U.S. 123 (1908). The exception created by *Ex Parte Young* has been interpreted to allow suits against state officials for prospective and declaratory relief in order to end continuing violations of federal law. *Balgowan v. State of New Jersey*, 115 F.3d 214, 217 (3d Cir.1997). The acts alleged here was a single incident and Plaintiff fails to plead and there is no evidence before the Court of any ongoing constitutional harm or violation. This was a single

---

[2] The injunctive relief sought is a transfer of Plaintiff to another prison. (ECF No. 1 at 3.)

event, and clearly not a continuing violation of Plaintiff's federal rights. Plaintiff's request for injunctive relief is dismissed.

## V. CONCLUSION

For the reasons expressed above, the Court will deny Defendants' motion for summary judgment (ECF No. 45) as to Plaintiff's excessive force claim against Defendants in the individual capacity for monetary damages. The Court will grant Defendants' motion for summary judgment in part and dismiss Plaintiff's conspiracy claim, official capacity claim for monetary damages, and Plaintiff's request for injunctive relief. An appropriate order follows.

DATED: January 8, 2024

                                                PETER G. SHERIDAN
                                                United States District Judge